Case number 2014-6406, 2014-6461, Anthony Smith et al. Chartis Casualty v. Joy Technologies Inc. 15 minutes to be shared by plan and awaiting the planning. 15 minutes to be suspended. Ms. Horner, for the announcement. Ms. Craig, for the interview. Good morning, Your Honors. My name is Lauren Horner. I'm here for the Smiths, Anthony and Loretta. I'd like to note at the outset that I have agreed to split the time with intervening plaintiff, Chartis Casualty. I will be taking 10 minutes this morning, and Chartis will be taking 5. My first section will go for 7 minutes, and I've reserved 3 minutes for rebuttal. May it please the Court and opposing counsel. This appeals involves two issues of first impression under Kentucky's strict product liability and negligence law. We have moved to certify both issues to the Kentucky Supreme Court, as the case law in this area remains unsettled. The first issue relates to the application of Shelton, which is a 2013 negligence opinion issued by the Kentucky Supreme Court, to our negligent failure to warn instruction used in this case. Second, this appeal involves the prejudicial use of the presumption of non-defectiveness and strict liability instructions used in this case. In reviewing the pleadings for this appeal, Your Honors, it came to my attention that I think the real disagreement between ourselves and an appellee here is that we're talking about a disparity between federal common law on inadequate warnings and what the law has evolved to in Kentucky on the same issue. Looking at some of the cases that appellee has cited for its position that there is no duty to warn a knowing user, it appears that these cases seem to derive from a Sixth Circuit case from the 70s called Garrison. Is this interpreting Kentucky law? It is. It's called Garrison v. Roman Haas, and it's interpreting the Post case, which is the seminal case on inadequate warnings in Kentucky. That case issued out of the Kentucky Supreme Court in 1968 during an age of contributory negligence. This was before comparative fault was adopted in Kentucky. Has Kentucky court ever applied comparative fault in a case like this one, in a products liability case like this one? Of course it has. Comparative fault was adopted in the 80s, both by case law and by statute, so it applies in all cases involving tort. Has it ever applied, though, in a case of a failure to warn? It absolutely has. It would apply in this case, but for this instruction that stands in contradiction to Kentucky law under Shelton. What case do you cite as from Kentucky that says that they do apply a failure to warn on a comparative fault basis? I couldn't give you a specific cite on that, but Highland v. Haas is the case that adopts comparative fault in Kentucky. Yeah, but not in a product liability context. I don't believe so, but I'm sure there are many examples. You cited Shelton, which is a Kentucky Supreme Court case. That was a premises liability case, wasn't it? It is a premises liability case, but it's also a negligence case, both premises liability and product liability. So it was an auto accident or negligence case, but I'm asking you, this is a product liability case we're talking about. This case is a products liability case. Can you cite me any Kentucky case that holds that it was wrong to give this kind of instruction on failure to warn in a products liability case? I cannot yet. I will tell you that- Not yet? Well, when? I'm sorry. Go ahead. No, go ahead. I will tell you that in the case Messerly, which we've cited in our briefs, the Kentucky Supreme Court did grant discretionary review on a products liability case that was not negligent failure to warn, but that would have applied, possibly, the Shelton rule in a products liability case. Well, you know, the problem I'm having, I guess, Shelton, with the premises liability case, it's based on a theory that, look, even if a hazard is equally known to the person that comes on a premises, there's still a further duty a landlord has because a landlord retains ultimate control over its premises and can fix the problem. Whereas there's nothing equivalent in a product liability case. I mean, once the product leaves the manufacturer, the manufacturer doesn't maintain continuing supervision over it the way a landlord does. Well, I would say that does stand in contradiction to Kentucky law. And, actually, if you were to look at the Waters case, which appellee- I keep wanting to call them defendant, I'm sorry- When it gets to the Waters case, they say that there is a continuing duty to warn on manufacturers after sale. So- If there's some known hazard, I mean, to the manufacturer. Sure, and evidence was introduced at trial that established that there was a known hazard. What was that? The pinch point that was created between the pusher jacks and a guide rail. Well, this outside guide rail. Right. The outside guide rail was not part of Joy's manufacture of this product. That was added by the foreman on the job of your client, right? This outer rail. According to him, he had seen the product before it was actually put on the market. And it did have the guide rail then. It also had a tow board at that time. What, you're saying the outer guide rail was part of what Joy put on? According to testimony that was introduced at trial, yes. I thought that was all added by, what's his name? Triplett? Triplett. Teddy Triplett. Teddy Triplett added another one, but according to his testimony, he's been- After it had been sold the first time and was then in the hands of the second owner or something down the line, isn't that right? It had been sold, I think, twice. Yeah. Now, I will say it was sold to a coal company by Appell Lee. So the contention that it was sold for scrap is a little bit- It was also sold for, I think, over a million dollars. But I would say that with respect to the duty to warn that's heightened, invitees are, to a certain degree, actually fairly comparable under products liability law to a consumer in that they don't have the same amount of control over a product and they don't have the same amount of knowledge. Here we're talking about somebody who had some knowledge of the danger, but he didn't have all of the knowledge because he didn't have flashing lights, he didn't have a warning alarm letting him know- He knew not to put his foot in this, quote, pinch point, didn't he? He knew not to do that, but when you're trying to uncouple a cat head, which can be 20 pounds and it's stuck, and you don't believe that it's moving, then you may accidentally put your foot in harm's way. And that goes precisely to the issue of inadequate warnings. But what if it didn't have a pinch point, right? As it was sold initially, it didn't have the pinch point that ended up injuring his foot. I believe the evidence at trial was unclear on that point, because Ted Triplett said that he saw it before it was actually sold the first time, and it did have a guide rail. He's the one who added that outer rail. He added it later after it had been sold a couple times when he rehabbed the machine. He added it or he didn't add it. He was either there or he wasn't. According to him, it is necessary for the machine to work. So the fact that a guide rail would be added was reasonably foreseeable because it was required for the machine to work. And unfortunately, I think my time is up. Thank you. Thank you. I think we're going to have the other half of the appellants here. Your Honors, my name is Kelly Gray. I'm here on behalf of the intervening plaintiff, Appellant Chartis Casualty Company, who was the workers' compensation carrier for Southern Coal, who was Mr. Smith's employer at the time of the subject accident. I have requested that one minute be reserved for rebuttal. May it please the Court, Your Honors. Chartis' argument in this claim is very narrow, and it all centers around Kentucky Revised Statute 411.182 entitled Allocation of Fault and Tort Actions. And in this claim or in this statute, what the statute did was indicate that in a case where a party, who may be a negligent party, has otherwise settled their liability, they may be then relieved from the duty of contribution, but there may be an apportionment of damages within the jury instructions in order to reduce appropriately the fault that otherwise would have been attributed to them. The specific issue in this case is the fact that the defendant or not defendant in this claim, Southern Coal, was not a party who had settled their civil liability. There was no settlement. Southern Coal paid workers' compensation benefits consistent with an administrative law judge order. Now, the Kentucky Supreme Court cases, there are three cases that have specifically mentioned how this interplays. And in those cases, all of those cases, either the third-party defendant, who would be Southern Coal, was either added as a party or there was an actual settlement of the workers' compensation claim. And the thing I would like to hit on most is that it will be portrayed that that is a splitting of hairs, as the Kentucky courts have said in dicta, not in direct holdings, that by coverage of workers' compensation, that equates to a settlement. Workers' compensation in Kentucky is an opt-out, not an opt-in. That is my field, and I have yet to see anyone who opts out, and otherwise it is state-mandated coverage. Does your case depend on our reversing her case as well? Yes, Your Honor, it is. Your case is, if we affirm her case, then your case goes by the board, so to speak. Yes, Your Honor, you're correct. So, you know, if we get from there and we get to go back to trial, our argument then is that Southern Coal should have either been added as a party, even though they can't have direct liability, and given the opportunity to decide whether or not they would mount a defense. How do you distinguish this Owens-Corning fiberglass versus Parrish, Kentucky 2001? Well, the big distinguishing factor in the Parrish case was, first, that the workers' compensation claim did settle. It did not go to an award. Now, in both cases, yes, workers' compensation benefits are paid, but the difference is, if I, as the workers' compensation carrier and the employer, decide to settle that claim, then I intrinsically have been able to take into consideration all of the effects of that settlement, such as my potential lien for my insurer being reduced by an apportionment instruction when I am allowed to be, my employer, Southern Coal, is allowed to be part of that apportionment determination in the court. How much money do you have in this case? How much money does your client have in this case? Benefits paid to date are over $250,000 in workers' compensation in Kentucky. They're entitled to lifetime medical benefits, so the amount of benefits are unknown and likely not to be ending. But in final comments is the two cases, the Rice case and the Parrish case, which are the two cases in Kentucky Supreme Court that have dealt with this issue. Neither one of those holdings directly dealt with the situation where there was a non-settling third party or non-settling employer. In those cases, either the employer was added as a third party and had their opportunity either to defend or represent their interests, or the workers' compensation claim had settled. And when there is a settlement, that is exactly what was envisioned by the statute. Somebody has negotiated their liability and therefore could take into effect those consequences. Thank you, Your Honors. Good morning, Your Honors. My name is Nick Pappas. My partner, Casey Hensley, and I represent JOI. May it please the Court, the judgment on this jury's unanimous verdict that the high-wall mining system was not defective and JOI was not negligent should be affirmed because the two instructions, two out of 33 of those instructions, that the plaintiff's challenge accurately and appropriately stated Kentucky law. The law is and always has been in Kentucky and in other states throughout this circuit that a manufacturer has no duty to warn of a known danger. And that's exactly what the District Court told this jury. And secondly, the rebuttable presumption instruction was based almost verbatim on the Kentucky statute. It was consistent with Kentucky Supreme Court precedent and in any event resulted in no prejudice to the plaintiff. I would like to clarify some of the facts that Your Honors brought up. The way this system works, just as my limited understanding, it looks like it would have been necessary to prevent this kind of accident from occurring or there would be some advanced warning by the person who was operating this pusher to let the person out here who's trying to adjust the cords and so on know that he or she is about to engage the pusher. And there was no device which would give that warning. That's true. Oh, no, I was with you all the way until the end. Okay. There was a device. He had a PA system he could have used. He had hand signals he was taught to use that he didn't. There was no automatic device that sounded a bell or an alarm when the pusher jacks moved. For good reason. The pusher jacks go back and forth all day long. But that's a very good question, Your Honor, and it gets to our main point in that that's a design question, right? And they tried to persuade this jury that this product was defective because it didn't include design features like that. And they lost, and the jury determined that it was not defective and unreasonably dangerous. And they haven't appealed that finding. So Your Honor's question gets to the heart of our argument, and that is they are confusing statements in premises liability, open and obvious danger cases, regarding the duty to keep the premises reasonably safe. They're confusing that with the duty to warn, which their own cases from the Kentucky Supreme Court establish that there is no duty to warn of a known danger. Getting back just briefly to the facts, this product was made in 1994. It was leased initially used for five years and in 1999 sold for scrap. There was no evidence that this guide rail that created the danger that ultimately resulted in the injury was on the product when it left my client's hands in 1999. It says that either it was on there, somebody testified about that, or that it was ambiguous or something. What was the testimony? It was not on there. There was testimony that that platform was clear when Joy manufactured this machine. And Teddy Triplett, the man who did modify it, testified that when he got a hold of the machine after it was sold for scrap, and that was the testimony in 1999, he rebuilt it. He repainted it gray. He painted over all the warnings, and he added the rail. What about the problem of this being foreseeable? That is that you couldn't make this device operate well to collect the coal in the cars without doing this, and so the manufacturer should have foreseen that this addition would have been made. There's something along that line, right? And there was certainly conflicting testimony about whether this was foreseeable. I mean, and that was a jury question, right? I mean, that was an issue not appealed, and that is, was it defectively designed? We had the modification defense. That was clearly our primary defense was this was not our product. They changed our product. And their rebuttal to that defense was, well, you should have foreseen it. And we had a lot of testimony that there was no way to foresee it. We had never heard of anyone doing this before. There was no reason to add this outer guide rail. The reason they had to add it is that they used a different continuous miner, which is sort of the tractor at the front of the train that cuts into the coal seam. They used a different one that was a different size, and because of that, the inner guide rails that were equipped in the machine initially weren't effective. So the guy had to add his outer guide rails. And he said that. Teddy Triplett testified unequivocally. The cutter was bigger than the one that was contemplated. Exactly. Brought out more coal. Slightly bigger cutter head, and importantly, the tracks. It's track-driven like a dozer. Tracks were wider. So the inner guide rails that Joy equipped on the machine were not effective then. So that's why he had to add the outer guide rails. Cars were bigger cars. Cars were. He rebuilt the cars. Unclear whether they're bigger or not. They were different. They weren't Joy cars. And then, importantly, Your Honors, the plaintiff testified unequivocally that he knew about this danger. That Teddy Triplett, ironically, the same guy who created the pinch point that wasn't there when Joy sold it, warned him about it and told him, you've got to keep your body out of there. And then when his own attorney, plaintiff's own attorney, on direct exam asked him, at the time of the accident, were you conscious of that warning? He said, remarkably, yes. The question, were you consciously aware of the danger? And this is when she's asking about the time of the accident. The answer, if I know my foot was there, yeah. But we were trying to uncouple them cat heads, and I just didn't realize where we were at. He knew of the danger. He admitted he knew of the danger at the very moment of the accident. He just didn't know where he was on the platform. They challenged the instruction on duty of the warrant that simply told the jury what the law is in Kentucky. And that law has remained unchanged for years and years. And as this court said in an opinion, Judge Merritt, that you joined in Hutt v. Gibson fiberglass, the general rule, however, is that there is no duty to warn the user of a product when the user is aware of the product's danger. That was a Sixth Circuit case applying Kentucky law. The Kentucky case is Edwards v. Hopson, Inc., where the Kentucky Court of Appeals said there is no duty to warrant against obvious risks. That's black-letter law throughout this circuit. This panel, in fact, Judge Merritt, you wrote Doe v. SexSearch.com applying Ohio law, Kern v. Pentec applying Michigan law. Judge Gilman, you wrote Miller v. Uniroyal Technology applying Ohio law. It's simply black-letter law that a manufacturer does not have a duty to warrant of known risks. And why is that? We can look to the premises cases that they cite for instruction from the Kentucky Supreme Court on the reason for the rule. And the reason for the rule is to equalize knowledge. If you have a man in the premises cases, if you have a landowner who knows of a danger and you have an invitee who does not, we have unequal knowledge and that landowner is going to have a duty to warrant to equalize that knowledge. Even if we make the jump from premises to product liability, which I don't think we should and I don't think it's appropriate, but I don't even need to argue that. If we do, those premises cases make very clear that there's no duty to warrant of an open and obvious danger. So they incorrectly read those cases and try to apply them to the product liability context. One question. Yes. You pled that there was an intervening cause as a defense because of the change of the device, the alteration of it. And what happened about that? The district court didn't agree or what? I think, Your Honor, the main thrust of our defense was modification and arguing as a defense to the strict liability claim that the product was unforeseeably modified. There wasn't a huge battle over intervening cause and it's not the subject of any of the issues raised in the appeal. But I think it's also, though, would have been an appropriate consideration for the jury. But in the first instance, the jury didn't even get to cause because they checked the first two boxes on the verdict form, which is the product was not defective and Joy was not negligent. If the district court was wrong about that question, then the case would have been over, essentially, or not. If the district court was wrong about which question? The intervening cause modification. I think the district court certainly could have granted a dispositive motion to Joy and it was the basis for a summary judgment that he denied. I think also, honestly, on the failure to warn, it would have been, and he took this under advisement. He never did issue a ruling. The jury was only out an hour, hour and a half and came back. On failure to warn, he clearly could have. And that's where we did argue proximate cause, Your Honor. We argued that how on earth could a warning even be an issue where our product was painted over, the on-product warnings undisputably had been painted over before this accident, and where the plaintiff knew about the danger that they say the product was defective for not warning about. Right? The plaintiff knew that the danger was. . . You say anyway. The jury resolved all that in its verdict. I'm sorry? The jury resolved all these questions by their verdict anyway. They absolutely did. I mean, all of the warning cases, most of them anyway, are summary judgment and directed verdict cases. And here they got the benefit of the doubt. The judge said we're going to let it go to the jury. Essentially, on the changes to the product, when you raised that on summary judgment, the district court essentially said there could be circumstances in which this is a foreseeable situation, so we'll let the jury figure that one out. Absolutely. Let me ask you this on the Carter case, which is, I gather, the most recent of the applicable. . .  . . . comparative fault analysis applies. I gather you're not disputing that. No, Your Honor. I think that if you read that line in context, it was concerning whether the court should apply its analysis in open and obvious danger to premises liability cases where it's an outdoor condition due to naturally occurring circumstances. In that case, it was ice. Ice, right? Right. But even, Your Honor, even if. . . Say I'm wrong. And comparative fault should apply in failure to warn cases. It just doesn't matter because those cases, the Kentucky Supreme Court cases, established that there is no duty to warn when the condition is open and obvious, even in a premises case. I think the court said it best in McIntosh, and this sort of sums up, I think, the error in the plaintiff's arguments where they kind of conflate this duty to keep premises reasonably safe, and that's what the court said. Question of fact. It's comparative fault. Is there any testimony in this case that the plaintiff thought that if there were going to be a problem at the pinch point, he would be warned in advance? No. No, there wasn't any of that, Your Honor. That was part of the expectation of the parties and of Joy that there would be a warning. Oh, no, I misunderstood. Absolutely. Plaintiff Mr. Smith. . . He said he understood that he put his foot in the pinch point when the device was being triggered that he would end up with an injured foot. I understand that. To that extent, he understood that this was a dangerous situation, but I just wondered if there were any evidence that he thought that that would be satisfied, that problem, because he would be warned in advance if the device was going to be started. He absolutely expected the operator, Adam Hall, to warn him in advance. He trained Adam Hall to use this machine, and there's two pages of my cross-examination of him where he acknowledged when he trained Adam Hall, he told him, make eye contact with the guys on the platform. He told him, announce on the PA system before you move the pusher jacks. He told him, don't move them when your guys are in the way. He blamed Adam Hall at trial for running the pusher jack into him. Again, their design theories that this should have been automatic and you should have had bells and whistles going off all the time, they tried and lost that. That was their theory. The quote that I thought was really directly on point in McIntosh is where the court said, in short, even where the condition is open and obvious, a landowner's duty to maintain the property in a reasonably safe condition is not obviated. But it merely negates the duty to warn of such a condition. That's where they keep mixing up the two issues, the duty to keep premises safe and the duty to warn. The Kentucky Supreme Court has stated over and over again there's no duty to warn of a known risk, even in the premises liability cases. So to that extent you are saying this motion to certify doesn't make any sense because there is still a distinction between premises and products liability cases. Yes. There's still a distinction between premises and product liability cases. And even if there weren't a distinction, the premises liability cases are dispositive. Even if we apply that reasoning to products, they lose because even in premises there's no duty to warn. So we ask the court to affirm. Thank you. Thank you, Your Honors. Several issues. I just want to point out one factual thing. The pusher jacks do go back and forth all day, except when the cars are stopped and somebody's working beside the car. So at the point when Anthony Smith had his foot in a danger zone, the pusher should not have been moving and there should have been no buzzers going off. Another just factual correction. It should have been warned by the fellow employee but wasn't. Right. But let's take into consideration that we're relying on somebody who, in fairness, was new at that job to remember to do that, to know not to accidentally push. Why should that be Joy's? I don't understand. Why should that be Joy's liability? I don't quite. If the liability there is the person who had his foot in the pinch point and the person who was pushing the device, if it was their fault that this occurred, how do you attribute that to Joy in that situation? Well, okay, so manufacturers still have a duty to warn that continues and they have the greatest control over their products compared to anybody. Both employees, the plaintiff and the other, knew that this was a problem. It was obvious. Well, and even with respect to obvious risks, according to Edwards, I mean, let's compare Shelton, which talks about open and obvious risks and how there can still be duties when there is an open and obvious risk. There can still be duties, but is there still a duty to warn? Different question. Well, I think if you look at the residual risk discussion in Shelton, there is a duty to warn, and the duty to warn includes an adequate warning. So what the residual risk section talks about, and it explicitly says that warnings must be adequate. If a warning is inadequate, then a residual risk remains that is akin to a latent danger. And by using that term, latent danger, I think the court is actually bringing in concepts of products liability. It's not saying let's only look at this as premises liability. It's trying to bring in other areas of tort law to show that these are general principles that need to be used in all tort cases, and that would be buttress v. Carter. I do want to just make a couple comments on the rebuttable presumption issue. I would like to point out that there is a longstanding tradition in Kentucky law to not put presumptions into instructions. This instruction on the rebuttable presumption of non-defectiveness was clearly prejudicial and misleading, and really just wrong, a wrong statement of the law according to how Kentucky courts have interpreted it. For all the reasons that we've discussed today, I hope that this court will overrule the district court and remand for new trial. Thank you so much for your time. Thank you, counsel. Your Honors, one quick follow-up in my remaining minute here. I wanted to touch more specifically on Judge Gilman's indication or question with regard to how the Parrish case did not apply, and again we're talking about the apportionment issue. What I wanted to point out is there are two federal district cases, one out of the Western District of Kentucky and one out of the Eastern District of Kentucky, which is the only two cases that have applied that law, KRS 411-182, in a circumstance where the workers' compensation carrier has not settled. Well, what I wanted to point out is that they incorrectly utilized the holdings of the two Supreme Court cases that we've discussed. First of all, the Rice case. That case was decided, it was instituted prior to the application or prior to the institution of KRS 411-182. Therefore, any language about its interpretation or application would not be holding. And the final case as to Parrish is the one thing I wanted to point out is that the holding in that claim was whether or not a settlement of workers' compensation meant the same thing as a settlement in the statute, which again is the heart of my issue. Thank you, Your Honors. I appreciate it. Thank you, counsel. The case will be submitted.